**UNITED STATES of America, Appellee,**

v.

**Henry BESSESEN, Appellant.**

**No. 19779.**

United States Court of Appeals, Eighth Circuit.

Oct. 29, 1970.

Rehearing Denied Dec. 14, 1971.

Lee E. Brophy, Minneapolis, Minn., for appellant.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

The defendant, Henry Bessesen, was tried and convicted of twenty-one counts of using the mails in connection with a scheme or artifice to defraud (18 U.S.C.A. § 1341) and four counts of using the mails to sell securities in a scheme or artifice to defraud (15 U.S.C.A. § 77q (a)). The defendant was sentenced to concurrent five-year terms on each count. We affirm.

The defendant's convictions relate to his activities as promoter of a trading stamp program known as Goal Systems. Goal Systems was promoted through the sale of franchise agreements which promised the investor a return on all stamps sold in his franchise area. Goal Systems agreed to develop each franchise area by convincing the local merchants to use the Goal Systems' trading stamps. It committed itself to using the proceeds from the sales of franchise agreements for promotional purposes. The defendant was active in Goal Systems from June 13, 1963, through the time of trial in March, 1969. Goal Systems operated primarily in California and in Minnesota. Goal Systems was a failure. Of the approximately $233,000 paid by investors for franchises, only a minute portion was ever returned.

The defendant conceded at trial that he sold the franchises specified in the indictment, but contended that he promoted the sales in good faith and without intent to defraud the public. On appeal, the defendant concedes that there was sufficient evidence, if believed, to support the jury's guilty verdict. He argues, however, that the evidence was close and that the trial court committed a number of trial errors which individually or cumulatively prevented him from obtaining a fair trial.

At the outset, we note a disagreement with the defendant's characterization of the evidence as being only marginally sufficient to sustain the verdict. We have carefully reviewed the evidence and find that there was very substantial evidence, apart from that to which the defendant objected, demonstrating the defendant's guilt. The evidence indicated that the following representations were made and that such representations were false:

(1) That the money invested would be used solely to promote Goal Systems nationally and in the particular profit sharing area.

(2) That development of the franchised areas would begin within 30 to 180 days.

(3) That an investment in a franchise area would produce immediate earnings.

(4) That a number of nationally known chain stores were or would be participating in the program.

In addition, the evidence indicated that several material facts were not disclosed to investors:

(1) Substantial numbers of stamp pads were issued without consideration and without provision for redemption.

(2) Payments to investors were made out of capital rather than out of earnings.

In light of the evidence, we fail to see how minor trial errors, if any, were prejudicial. We nonetheless consider the defendant's major contentions.

I

The government introduced into evidence a July 23, 1965, California Cease and Desist Order directing the defendant to refrain from engaging in the trading stamp business and from promoting Goal Systems franchise agreements until California Corporation and Securities Laws had been complied with. The government proved that the order had been served upon the defendant, that it had been violated and that the defendant had not disclosed the existence of the order

to investors while promoting Goal Systems.

The defendant alleges that the trial court erred when it failed to give the following jury instruction:

"If Mr. Bessesen in any manner acted contrary to the California Cease and Desist Order, it is in no way material in this case except as it may tend to bear on the issue of intent to defraud. Defendant is not here charged with any violation of the California Cease and Desist Order."

■ In our view, the trial judge properly refused to give such an instruction. The government charged that the defendant had misled investors by making false representations and by concealing material facts. Among the facts alleged to have been concealed was the existence of the California Cease and Desist Order. The government proved that the defendant had continued to sell franchise agreements in California after the issuance of the Cease and Desist Order without disclosing its existence to the investors. Under the circumstances, we think the jury was properly allowed to consider whether the defendant's failure to advise the California investors of the Order was the misleading concealment of a material fact. Thus, the requested instruction would have improperly restricted the purposes for which the jury could consider the defendant's actions relative to the California Cease and Desist Order. Nemec v. United States, 178 F.2d 656 (9th Cir. 1949), cert. denied, 339 U.S. 985, 70 S.Ct. 1006, 94 L.Ed. 1388 (1950).

## II

The government's first witness was Harvey Scheinkman. In substance, Scheinkman testified that he had first met the defendant in April of 1964 in regard to a separate credit promotion involving the defendant; that in June of 1964, he again met with the defendant, at which time the defendant explained a new program—Goal Systems—to him;

that he thereafter invested $1,000 in Goal with the understanding that forty percent of that amount was to be used for local advertising and sixty percent for national advertising and that he was to receive twenty cents per stamp pad sold as a return on his investment; that he received no return of any kind; and that after he invested in Goal Systems, the defendant urged him to ignore his earlier investment in the credit plan and concentrate on Goal Systems.

The defendant contends that this evidence was erroneously admitted because there was no connection between the testimony of Scheinkman and the allegations and charges in the indictment.

■ We disagree. Most of the testimony concerning Goal Systems was directly related to the allegations in the indictment that the defendant had organized and promoted Goal Systems. The remaining testimony which related to the credit plan and to the failure of Goal Systems was admissible under the rule that where intent and knowledge are essential elements of an offense, evidence of other acts similar in nature and closely related in time to those encompassed in the charge is admissible to establish intent and guilty knowledge. Von Feldt v. United States, 407 F.2d 95 (8th Cir. 1969). See also, United States v. Deaton, 381 F.2d 114 (2nd Cir. 1967); Koolish v. United States, 340 F.2d 513 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965).

## III

The defendant contends that the trial judge made two improper and prejudicial statements in the presence of the jury. The first statement objected to occurred during the redirect examination of a prosecution witness. On cross-examination, the defense had attempted to establish the position that the defendant's actions represented a good faith effort to repay the witness in spite of financial adversity. It had done so by referring to a Goal Systems Newsletter sent out

by the defendant which contained the following:

"Question: If the Area covered by my Franchise doesn't produce enough pad sales to make my franchise worthwhile, now or in the future, what then?

"Answer: First, from *all* business being done, we intend to repay your deposit monies, within the two-year term of your Franchise. Then when your pad deposit monies have been paid to you, we will submit a revised Agreement to you wherein you will receive a franchise commission of 25¢ per pad sold anywhere, proportionate to your deposit." (Emphasis included.)

On redirect examination, the prosecutor responded to that line of questioning with the following question:

"It would also appear from that letter that [the defendant] amended your contract without your permission, is that not correct, Mr. Adolphson, and that he's apparently agreed that if any pad sales are made in Martin County he's going to distribute them to all franchise holders wherever they may be?"

Defense counsel objected to the question as a misstatement of what had been said, stating:

"There is no change of his contract. He has gone beyond what he has said he would do. He is going to give him more."

The trial judge then responded:

"I think it is a fair question, Mr. Brophey. The indication is that the defendant is intending to break all of his contracts."

■ In our view, the court's comment was not prejudicial error. The question was a fair one and the judge was correct in his ruling on the objection. The remainder of the comment may not have been necessary, but a federal judge has the power to comment on the evidence so long as he does not become an advocate for one side. Kramer v. United States, 408 F.2d 837 (8th Cir. 1969). See also, Leffler v. United States, 409 F.2d 44 (8th Cir. 1969). Here, the comment on the evidence, especially when considered in the context of a trial which lasted nine days, cannot be considered unfair advocacy.

■■ The line of questioning being pursued was rather complicated, the defense counsel's objection tended to confuse the issue and the judge's comment was a clarification of his understanding of the testimony. We do not think he overstepped the bounds of propriety. Ray v. United States, 367 F.2d 258 (8th Cir.), cert. denied, 386 U.S. 913, 87 S. Ct. 863, 17 L.Ed.2d 785 (1966). Furthermore, since the defendant did not object or move for a corrective instruction, any alleged error was not properly preserved for appellate review. Petschl v. United States, 369 F.2d 769 (8th Cir. 1966).

The second comment objected to by the defendant occurred during direct examination of another government witness. After the defense objected to a question as calling for hearsay, the following exchange took place:

"THE COURT: Mr. Cudd, I assume the testimony is hearsay, isn't it?

"MR. CUDD [the prosecutor]: Well, it is, Your Honor, but it is the government's position that we have established the scheme and, therefore, since Mr. Adolphson is an agent of the company, that the statement of his agent in furtherance of the company's business is now admissible."

The trial judge then overruled the objection.

The defendant argues that this exchange improperly denoted the court's agreement with the prosecutor and directed the jury on a basic fact issue in the case.

■ First, we note that the defendant did not object nor request a corrective instruction when the exchange occurred. More importantly, we do not think the trial judge committed error. The defendant had objected, the testimony called for was clearly hearsay and the trial court needed to know whether it was ad-

missible under some exception to the hearsay rule. When the reason was provided, the judge merely overruled the objection without comment. Furthermore, at the close of the case, the judge carefully instructed the jury that they could consider statements made by various persons in the absence of the defendant only if *they first found* beyond a reasonable doubt:

(1) that the defendant had knowingly and intentionally devised the scheme described in the indictment; and

(2) that the statement or statements were made pursuant to such a scheme and in furtherance thereof.[1]

While the trial court should be careful not to influence the jury, it is clear that under all the circumstances of this case the trial court acted properly. See, United States v. Allegretti, 340 F.2d 254 (7th Cir. 1964) (en banc), reversing in part, United States v. Allegretti, 340 F.2d 243 (7th Cir.), cert. denied, 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965).

### IV

On cross-examination, the government questioned the defendant regarding the promotion of a health credit card system in Arizona. The defendant admitted that he had promoted such a plan in 1961 and that the State of Arizona had issued a cease and desist order against him in connection with those activities. The government then introduced a copy of the order.

On appeal, the defendant contends that the trial court committed prejudicial error in admitting into evidence that part of the order which recited:

"Whereas, it appears to this Commission that the above persons have engaged in, are engaging in, or are about to engage in acts, practices and transactions which constitute violations of the [Arizona securities laws] * * *."

We do not agree that the admission of this recital was prejudicial error. The government's line of questioning was an attempt to show the defendant's intent to defraud. The defendant claimed that he acted in good faith at all times. The government had shown that the defendant had violated a California Cease and Desist Order in connection with the promotion of Goal Systems. These violations of the California Order were far more suspect when the government showed that the defendant had engaged in similar activities and had received a cease and desist order in Arizona in the recent past.

■■ The Arizona Cease and Desist Order was generally admissible as an official record. 28 U.S.C.A. § 1732; LaPorte v. United States, 300 F.2d 878 (9th Cir. 1962). In light of the defendant's admission that he had participated in the promotion of the health credit card plan and the proper admission into evidence of the order requiring the defendant to cease activities in the State of Arizona until the securities' laws had been complied with, we think that the government's purpose was completed and the portion of the order objected to was not prejudicial.

### V

The defendant was convicted on four counts of violating security statutes in the sale of the franchise agreements. The defendant urges that the trial judge erroneously invaded the province of the jury by instructing the jury that the franchise agreement was a security.

■■■ While this contention is not without merit,[2] we do not think it can

---

1. We think that under Reistroffer v. United States, 258 F.2d 379 (8th Cir. 1958), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959), and Pritchard v. United States, 386 F.2d 760 (8th Cir. 1967), cert. denied, Borchelt v. United States, 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968), this was a proper jury instruction. See also, Schaefer v. United States, 265 F.2d 750 (8th Cir.), cert. denied, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959).

2. See, *e. g.*, United States v. England, 347 F.2d 425 (7th Cir. 1965).

help the defendant. The court imposed a general five-year sentence on each of the twenty-five counts of the indictment upon which the defendant was found guilty. Only four of these counts involved violations of the securities' statute. Under the concurrent sentence rule, a proper conviction on at least one count will support the judgment. Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1969); Tarvestad v. United States, 418 F.2d 1043 (8th Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970). The concurrent sentence rule is applicable here for we can perceive no prejudice in the alleged error, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and "the danger that adverse, collateral legal consequences might flow from a failure to rule on this allegation is remote," Kauffmann v. United States, 414 F.2d 1022 (8th Cir. 1969), cert. denied, 397 U.S. 962, 90 S.Ct. 995, 25 L.Ed.2d 254 (1970).

We have carefully reviewed the record and the defendant's remaining contentions. We conclude that the defendant received a trial free of prejudicial error. The conviction is affirmed.