**UNITED STATES of America**

v.

**Raymond Gary HAYNES.**

**No. 3–84–00209.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 22, 1985.

William Warren, Asst. U.S. Atty., Nashville, Tenn., for the U.S.

Aubrey Harwell, Nashville, Tenn., for Haynes.

## MEMORANDUM

WISEMAN, Chief Judge.

Before the Court is a motion by defendant to dismiss the superseding indictment against him.[1] The indictment in this case arises from an alleged scheme to defraud farmers who had guaranteed the repayment of funds borrowed by the Blanton Smith Corporation from the Springfield (Tennessee) Production Credit Association ["PCA"]. Defendant was the president of the Springfield PCA at the time the farmers guaranteed the loans. The indictment alleged three counts of mail fraud (18

---

1. As grounds for this motion, Haynes argues that each count in the indictment fails to state an offense as required by Rule 7(c) of the Federal Rules of Criminal Procedure. On December 19, 1984, defendant Haynes was indicted on charges of mail fraud, conspiracy to commit mail fraud, and criminal conflict of interest. Haynes plead not guilty to the charges. On April 17, 1985, the government filed a superseding indictment against Haynes, charging the same offenses but altering some language in the fifth count. For the purposes of this memorandum, the superseding indictment shall be referred to as the indictment.

U.S.C. § 1341),[2] one count of conspiracy to commit mail fraud (18 U.S.C. § 371)[3], and one count of criminal conflict of interest (18 U.S.C. § 208(a)).[4] Defendant has moved to dismiss the indictment on four grounds. For the reasons stated below, the Court denies defendant's motion to dismiss Counts One, Two, Three, and Four, and grants defendant's motion to dismiss Count Five.

## A. Criminal Conflict of Interest

The Court first shall address defendant's challenges to Count Five of the indictment. Defendant contends that Count Five, alleging a violation of 18 U.S.C. § 208, should be dismissed because the statute does not apply to employees of production credit associations. Generally, this statute imposes penalties on certain classes of government employees if they participate in a govern-

ment decision in which they have a present or prospective financial interest. *See Exchange National Bank of Chicago v. Abramson*, 295 F.Supp. 87 (D.C.Minn. 1969). The statute applies to officers and employees of the executive branch, of any independent agency of the United States, or of the District of Columbia, and directors, officers and employees of the Federal Reserve Bank.[5] Defendant argues that 18 U.S.C. § 208(a) is inapplicable because a production credit association is not an "independent agency" of the United States.

Production credit associations are federally chartered instrumentalities under the Farm Credit Act of 1933, as amended, 12 U.S.C. §§ 2001—2259. 12 U.S.C. § 2091. They fall under the broad umbrella of the Farm Credit System.[6] Although the par-

---

**2.** These three counts charge that defendant devised a scheme to raise money to keep the Blanton Smith Corporation in operation and to repay PCA for the money loaned in excess of the authorized limits. The indictment describes the general elements of the scheme as follows:

On or about January 1, 1980, Gary Haynes devised a scheme to raise money to keep the Blanton Smith Corporation in operation and to repay PCA for the money loaned in excess of authorization. He planned to do this by inducing the individual affiliated farmers to increase the guarantee on their "bird notes" from $2.00 to $2.50 per hen. It was part of the scheme not to inform the farmers of the illegal acts of the Blanton Smith Corporation, of the precarious financial situation of the Blanton Smith Corporation and the reasons for it, of the negligence on the part of PCA in failing to demand copies of the checks used to pay off invoices and to note that the invoices reflected sales of eggs beyond the company's production capacity, and finally, he planned to conceal his own interest in keeping the Blanton Smith Corporation in business and thereby preserving his lease arrangement for the hatchery in Pleasant View of the Blanton Smith Corporation.

Count One alleges that defendant placed a letter in the mail addressed to the Federal Intermediate Credit Bank of Louisville ["FICB"] which provided answers to questions posed by the FICB as a precondition for approval of the loans to the Blanton Smith Corporation. Count Two charges that Haynes caused a letter from the Springfield PCA signed by another person to be placed in the mail addressed to two of the victimized farmers, "reaffirming" their liability on the note they had guaranteed. Count Three

alleges that Haynes caused a letter from the legal representative of the Springfield PCA to be placed in the mail addressed to two of the farmers, demanding payment on the note they had guaranteed.

**3.** Count Four alleges that Haynes engaged in a conspiracy to commit mail fraud with Blanton Smith, Jr. and other persons.

**4.** Count Five alleges that Haynes, as an officer of the Springfield PCA, approved an application for a loan to the Blanton Smith Corporation in a matter in which defendant Haynes and his father had a financial interest, in violation of the criminal conflict of interest statute, 18 U.S.C. § 208(a).

**5.** This statute was amended in 1977 to extend the conflicts of interest prohibition to Federal Reserve Bank directors, officers, and employees. Pub.L. 95–188, § 205(a) (1977).

**6.** The objective of the farmer-owned cooperative Farm Credit System is to satisfy the specialized credit needs of American farmers and ranchers while encouraging them to participate through management, ownership, and control of the system. 12 U.S.C. § 2001(a); *Daley v. Farm Credit Administration*, 454 F.Supp. 953, 954 (D.Minn. 1978). The Farm Credit System includes such institutions as the federal land banks, the federal land bank associations, the federal intermediate credit banks, production credit associations, and banks for cooperatives. Each of the institutions of the Farm Credit System is chartered as an instrumentality of the United States by the Farm Credit Administration, an indepen-

ties dispute the issue of whether or not production credit associations are independent agencies of the United States, they have failed to detail the government's involvement, or lack thereof, in the creation and operation of production credit associations.

Few courts have considered the government's involvement in the operation of production credit associations. Those that have considered the issue as it relates to various statutes have reached conflicting results. The government cites *Schlake v. Beatrice Production Credit Association*, 596 F.2d 278, 281 (8th Cir.1979), for the proposition that the federal government has "pervasive involvement ... in the creation and operation of production credit associations." The court in *Matter of Sparkman*, 703 F.2d 1097, 1101 (9th Cir. 1983), relied on this language in stating that "production credit associations are more than private institutions with a federal charter" and held that production credit associations are "federal instrumentalities" which enjoy immunity from punitive damages. As recognized by the dissent in *Sparkman*, however, the circuit court in *Schlake* merely refers to the lower court's "extensive" unreported findings regarding the government's "pervasive" involvement with production credit associations rather than detailing that involvement itself. *Sparkman*, 703 F.2d at 1102 n. 1 (Frye, J., dissenting). The dissent also noted that production credit associations are "privately organized, privately owned, and privately operated corporation[s], albeit federally

dent agency of the federal executive branch, and is subject to the supervision and regulation of the Farm Credit Administration. 12 C.F.R. § 611.400.

In the Farm Credit System the nation is divided into twelve districts, each of which has a federal land bank, a Federal Intermediate Credit Bank, and a bank for cooperatives. 12 C.F.R. § 600.10. Each district is served by a number of production credit associations, which are federally chartered instrumentalities. 12 U.S.C. § 2091; 12 C.F.R. § 600.10. Production credit associations generally may finance on a short-term and intermediate-term basis farmers and ranchers, 12 C.F.R. § 600.50, and are managed by shareholder/borrowers.

chartered." *Id.* at 1101. *See also Birbeck v. Southern New England · Production Credit Association*, 606 F.Supp. 1030, 1041 (D.Conn.1985) (except in those areas where Congress specifically has legislated and regulated, "institutions within the Farm Credit System were meant to be treated as local privately-owned entities, citizens of the states in which their principal offices were located, and subject to state law"); *Bowling v. Block*, 602 F.Supp. 667 (S.D. Ohio 1985) (without addressing the issue, the court characterized production credit association as nonfederal defendant).

■ Defendant attempts to distinguish independent federal agencies from federally chartered instrumentalities by drawing an analogy between national banks in the Federal Reserve System and production credit associations in the Farm Credit System. While the Court has found no case adopting this reasoning, the Court finds this comparison well-founded and incorporates it as part of its holding. The organization of the Federal Reserve System is similar to that of the Farm Credit System [7] and, like production credit associations, national banks are federally chartered instrumentalities. *First National Bank of Boston v. Belloti*, 435 U.S. 765, 779 n. 14, 98 S.Ct. 1407, 1416–17 n. 14, 55 L.Ed.2d 707, 719 n. 14 (1978). National banks are not independent agencies of the United States for purposes of 18 U.S.C. § 208(a). Under this analysis, analogizing to the Federal Reserve System, neither are production credit associations.[8] Therefore, after re-

7. Like the Farm Credit System, the Federal Reserve System includes the Federal Reserve Bank, a federal agency, and national banks, which are heavily regulated commercial enterprises. *See generally* 12 U.S.C. §§ 221–228. One Federal Reserve Bank is located in each of the twelve Federal Reserve Districts. 12 U.S.C. § 222–223. All national banks are members of the Federal Reserve System. 12 U.S.C. § 221.

8. Defendant points out that the fact that the federal conflicts of interest statute, 18 U.S.C. § 208, was extended in 1977 to cover employees of the Federal Reserve Bank, which the statute had not covered previously, *see* 1977 U.S. Code Cong. & Admin. News 3636, 3642, indicates that

viewing the Farm Credit Act of 1971, its legislative history and its subsequent amendments, the Court concludes that a production credit association, much like a national bank, is not an "independent agency" of the United States for purposes of the federal conflicts of interest statute, 18 U.S.C. § 208. Accordingly, Count Five of the indictment is dismissed for failure to state an offense.

## B. Mail Fraud

### 1. Allegation of Fraudulent Scheme

Defendant also contends that Counts One, Two and Three of the indictment, which allege violations of the mail fraud statute, 18 U.S.C. § 1341, must be dismissed. A violation of the mail fraud statute may be established only if the government can prove: (1) a scheme to defraud; and (2) the use of the mails to execute that scheme. *Pereira v. United States*, 347

---

the statute does not apply to officers and employees of production credit associations.

**9.** An implicit element of a fraudulent scheme which the government must prove is a specific intent to defraud. *See, e.g., United States v. Goodpaster*, 769 F.2d at 377; *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980).

**10.** Defendant relies on regulations governing operation of the Farm Credit Administration and its affiliated associates, such as the production credit associations, *see* note 6 *supra*. Specifically, defendant relies on regulations which preclude the disclosure of confidential information. 12 C.F.R. §§ 618.8300, 8320.

**11.** The indictment also charges that, while defendant fully apprised the Federal Intermediate Credit Bank of Louisville ("FICB") of the financial condition of the Blanton Smith Corporation and the criminal acts of its employees when he applied to FICB for approval of the loan, he did not inform FICB that the farmers/guarantors had not been informed of the same facts. The indictment alleges that FICB would not have approved the loan to the Blanton Smith Corporation had the FICB known that the farmers did not have all the facts upon which to base a decision to increase their guarantees.

**12.** The scheme to defraud element has been defined by the Sixth Circuit according to a non-technical standard, which requires the consideration of such factors as moral uprightness, fundamental honesty, fair play and right dealing in

---

U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed.2d 435 (1954). *See, e.g., United States v. Goodpaster*, 769 F.2d 374, 377 (6th Cir.1985) and cases cited therein.[9] Defendant asserts that the confidentiality provisions of the Privacy Act of 1974, 5 U.S.C. § 552a, and federal banking regulations,[10] on which he relied in good faith, imposed on him a legal obligation not to disclose the information pertaining to the financial dealings of the Blanton Smith Corporation which was alleged in the indictment as having been unlawfully withheld from the farmers.[11] Defendant also argues that his failure to disclose an alleged conflict of interest is insufficient to constitute the necessary intent to defraud for purposes of the mail fraud statute. Accordingly, defendant argues no fraudulent scheme exists.[12]

 Defendant's reference to the Privacy Act first must be addressed.[13] The

---

the life of the community. *See, e.g., United States v. Stull*, 743 F.2d 439, 446 (6th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985); *United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979).

**13.** 5 U.S.C. § 552a(b) provides:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—[emuneration of eleven permitted disclosures].

By its own terms, the Privacy Act applies only to federal agencies and only protects individuals. The Privacy Act adopts the definition of "agency" as found in the Freedom of Information Act ["FOIA"], which includes "Government controlled corporation[s]." 5 U.S.C. § 552(a). *See* 5 U.S.C. § 552a(a)(1). Courts have helped to define the parameters of the definition's scope. *See, e.g., Windsor v. The Tennessean*, 719 F.2d 155, 160 (6th Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984) ("agency" does not encompass individual government officials such as United States attorneys for purposes of the Privacy Act); *Public Citizens Health Research Group v. Dept. of HEW*, 668 F.2d 537 (D.D.C.1979) (reversing lower court decision at 447 F.Supp. 595, which defendant cites as *rev'd. on other grounds* on this issue); *United States v. Miller*, 643 F.2d 713, 715 n. 1 (10th Cir.1981)

purpose of the Privacy Act is to protect against an invasion of personal privacy by restricting the disclosure by Federal agencies of personal information of individuals without their consent to a limited number of routine uses. *See Local 247, American Federation of Government Employees v. Defense General Supply Center,* 423 F.Supp. 481 (E.D.Va.1976), *aff'd* 573 F.2d 134 (4th Cir.1978); *see generally* Pub.L. 93–579, § 2 (1974). Defendant's claimed reliance on the Privacy Act is misplaced for two reasons. First, the Blanton Smith Corporation is not an "individual" for purposes of the Privacy Act. *See* 5 U.S.C. § 552a(a)(2) (definition of "individual") institutions are not government controlled corporations for purposes of the Privacy Act and the Freedom of Information Act. *See* note 13 *supra.* This Court considered the amount of governmental control over production credit associations in an earlier part of this opinion dealing with the federal conflicts of interest statute, 18 U.S.C. § 208, and drew an analogy between production credit association and national banks. The same reasoning applies for the Privacy Act. Therefore, the Court holds that a production credit association is not an "agency" bounded by the constraints of the Privacy Act, 5 U.S.C. § 552a.

■ Defendant's claimed reliance on the federal regulations governing operation of the Farm Credit Administration and its affiliated associates [14] as justifying his nondisclosure of information regarding the activities of the Blanton Smith Corporation also is misplaced. Citing *Parr v. United States,* 363 U.S. 370, 391, 80 S.Ct. 1171, 1183–84, 4 L.Ed.2d 1277, 1291 (1960), defendant argues that an act required to be performed under the "imperative command of duty" imposed by law cannot form the basis for a mail fraud prosecution. In *Parr,* defendants were nine individuals and two state banking corporations who, through their control of a Texas school board, misappropriated funds of the school district and used the mails in connection with the collection of school taxes. The Supreme Court overturned their mail fraud convictions because the mailings for tax collection purposes were required to be made by state law. The Court stated that even if some of those who are legally required to do the mailing plan to steal some of the moneys when or after received, the scheme to defraud required for a mail fraud conviction is not present. *Id.* Thus, defendant's characterization of *Parr's* holding is overbroad and misleading. *Parr* requires that the mailings themselves be required by law. Nothing in the record at this point indicates that the mailings which are the subject of Counts One, Two and Three of the indictment were required by law, leaving a question of fact for the jury.

■ Defendant's next objection involves a question of fact. Defendant argues that his good faith, evidenced by his compliance with federal banking regulations,[15] negates

(national bank is not an agency for purposes of Privacy Act); *Recap v. Indiek,* 539 F.2d 174, 177 (D.C.Cir.1976) (holding that it is clear that "the [Federal Home Loan Mortgage] Corporation is subject to such substantial control over its day-to-day operations that the dividing line for FOIA purposes must be drawn between national banks and federally-insured savings and loan associations, not covered by FOIA, and entities like the Corporation which ... were intended to be included within the 1974 expansion [of FOIA's definition of "agency"] ). For a thoughtful exposition of the legislative history of this term, see *Ehm v. National Railroad Passenger Corporation,* 732 F.2d 1250, 1252–55 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 387, 83 L.Ed.2d 322 (1984) (Amtrak found not to be a government controlled agency for purposes of the Privacy Act). This Court must determine whether a production credit association is an "agency" and whether the Blanton Smith Corporation is an "individual" for purposes of the Privacy Act.

**14.** *See* note 9 *supra.*

**15.** Defendant cites three cases for the proposition that good faith operates as a complete defense to mail fraud: *United States v. Hopkins,* 744 F.2d 716, 717 (10th Cir.1984); *United States v. Fowler,* 735 F.2d 823, 828 (5th Cir.1984); and *United States v. Sherer,* 653 F.2d 334, 337 (8th Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981). These cases, however, provide no support for a dismissal of the first three counts of the indictment. Moreover, the government charges that defendant violated the provisions of 12 C.F.R. § 612.2135, which re-

any alleged fraudulent intent as a matter of law and thus the first three counts must be dismissed. A defendant's good faith, however, requires only that a trial court give an instruction on good faith to the jury if there is any evidentiary support for this legal defense to mail fraud.[16] The issue of intent necessarily relies on a factual determination for resolution by the jury. It is inappropriate for consideration on a motion to dismiss.

▇▇▇ Defendant also vigorously contests the government's contention that defendant had a confidential or fiduciary relationship with the farmers on the ground that this theory appears for the first time in the government's memorandum rather than the indictment.[17] It is well-established that an indictment is sufficient if it fairly informs the accused of the charges against him so as to enable him to prepare his defense and if it adequately enables the defendant to be protected against further prosecution for the same offense. *See, e.g., Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038 1047, 8 L.Ed.2d 240, 250–51 (1962); *Payne v. Janasz,* 711 F.2d 1305, 1312 (6th Cir.), *cert. denied,* 464 U.S. 1019, 104 S.Ct. 552, 78 L.Ed.2d 726 (1983); *United States v. Seelig,* 622 F.2d 207, 211

(6th Cir.1980), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1981); *see also* Fed.R.Crim.Proc. Rule 7(c). Because the indictment fails to allege that the defendant violated a special duty of disclosure based on a fiduciary or confidential relationship,[18] the government may not use this theory at trial to prove the "scheme to defraud" element of mail fraud. The indictment does, however, allege fraud, fraudulent inducement and fraudulent pretenses in obtaining the guarantees and the inherent tangible rights. Accordingly, at trial the government may prove any acts or omissions which constitute common law fraud. It is a well-established principle of mail fraud that false or fraudulent representations may consist of half truths, inaction, or concealment of material facts. *See, e.g., United States v. Stanford,* 589 F.2d 285, 295–96 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Bessesen,* 433 F.2d 861, 864 (8th Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1254, 28 L.Ed.2d 545 (1971); *see generally* 2 F. Devitt & C. Blackmar, *Federal Jury Practice & Instructions* § 47.04 (3d ed. 1977). This issue is a factual matter which must await proof. The government is not required by

---

quire high standards of honesty and integrity and avoidance of conflicts of interest from officers, directors and employees of Farm Credit institutions.

**16.** See note 15 *supra.*

**17.** The government argues that, under Tennessee common law, the defendant had a legal obligation to disclose to the farmers all information which would have been material to their decision regarding the guarantees. The government bases this proposition on case law which holds that a confidential relationship is one in which a dominant party has the ability to exercise dominion over the dominated party and knows of the trust placed in him. *See Edwards v. Travelers Insurance,* 563 F.2d 105, 115 (6th Cir.1977) (*citing Iacometti v. Frassinelli,* 494 S.W.2d 496, 499 (Tenn.App.), *cert. denied* (1973) ). The government argues that one who fails to disclose material information before the consummation of a transaction when he is under a duty to do so commits fraud. *See Chiarella v. United States,* 445 U.S. 222, 227–30, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348, 356–58

(1979) (recognizing this common law rule with respect to the relationship between corporate insiders and stockholders); *Edwards,* 563 F.2d at 114–15. The government also cites *Central States Stamping Co. v. Terminal Equipment Co.,* 727 F.2d 1405, 1408–09 (6th Cir.1984) (court found that once bank officer undertook to provide information to purchaser regarding financial stability of bank customer, duty to disclose instability of bank customer existed; in addition, duty to disclose arises under Ohio law when one party imposes confidence in the other because of that person's position, and the other party knows of the confidence placed in him) for this proposition.

**18.** The government prudently refrained from attempting to apply federal common law to the fiduciary responsibilities of production credit association officers, *see Boyster v. Roden,* 628 F.2d 1121 (8th Cir.1980), but failed to charge in the indictment that state fiduciary law applied to them. *See, e.g., id.; see also Bowling v. Block,* 602 F.Supp. 667 (S.D.Ohio 1985) (opinion announced after the indictment in this case was handed down).

the Constitution or the Federal Rules of Criminal Procedure to put a defendant on notice in the indictment as to every means by which the prosecution hopes to prove the accused committed the crime. *See United States v. Haldeman,* 559 F.2d 31, 124 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). The defendant may, however, raise these matters by motion at the close of the government's proof.

For the reasons stated in this subsection, defendant's motion to dismiss Counts One, Two, and Three of the indictment is denied.

### 2. Allegation of Mailings "In Furtherance Of" Fraudulent Scheme.

Defendant next contends that Counts Two and Three of the indictment, which allege violations of the mail fraud statute based on separate mailings to two farmer couples,[19] must be dismissed. Defendant argues that the second element of a violation of the mail fraud statute, which is that the mailings were made for the purpose of executing the fraudulent scheme, *see, e.g., Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed.2d 435, 444 (1954); *United States v. Bibby,* 752 F.2d 1116, 1125 (6th Cir.1985) (appeal pending); *United States v. Strong,* 702 F.2d 97, 100 (6th Cir.1983), cannot be proven.

The completion of the alleged fraud, defendant argues, occurred upon the disbursement of the funds which had been borrowed as a result of the increase in the farmers' guarantees. The defendant states that the disbursement occurred at least several months prior to the mailings. He characterizes the two letters which are the focus of Counts Two and Three as nothing more than collection letters which were intended to "adjust accounts" between the victims of the alleged scheme. Citing the Sixth Circuit's opinion in *United States v. Maze,* 468 F.2d 529, 532–33 (1972), *aff'd,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974),[20] defendant contends that a mailing made *after* the proceeds of a scheme have been received may support a conviction for mail fraud only if the mailing was used to "lull" the victim into a false sense of security in order to forestall discovery of the scheme or to delay detection of the scheme until the defendant has had the opportunity to evade capture or steal additional funds.

■■■ While it is not necessary for the mailings to be an essential part of the contemplated scheme, the use of the mails must be caused by the defendant in furtherance of the fraudulent scheme in order to satisfy the requirements of mail fraud. *Maze,* 414 U.S. at 400, 94 S.Ct. at 648, 38 L.Ed.2d at 608; *Strong,* 702 F.2d at 100. A use of the mails which is not a "step toward receipt of the fruits of the scheme" is not a violation of the mail fraud statute. *United States v. Talbott,* 590 F.2d 192, 195 (6th Cir.1978) (quoting *United States v. Staszcuk,* 502 F.2d 875, 880 (7th Cir.1974), *modified,* 517 F.2d 53, *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975) ). Therefore, the mail fraud statute has not

---

**19.** See note 2 *supra* for a description of these mailings.

**20.** In *Maze,* the defendant was convicted of mail fraud for allegedly devising a scheme to defraud an individual, a bank, and several merchants by unlawfully using the individual's bank credit card to obtain goods and services. The defendant contended that the sales invoices mailed by the bank and merchants in an attempt to collect the money improperly paid to the defendant were merely incidental to the scheme. The government claimed the mailings were made in "furtherance of" the alleged scheme. The Sixth Circuit Court of Appeals reversed the conviction, holding that the transactions were completed at the time defendant obtained the goods and services, and that it was immaterial to the defendant how or whether the merchants collected the money. 468 F.2d 529 (1972). The Supreme Court affirmed the Sixth Circuit's reversal of the conviction, holding that the mail fraud statute was not violated because the scheme was completed at the time defendant received the goods and services and the mails were used for the purpose of adjusting the accounts between the merchants, bank, and card holder, rather than for the purpose of executing the defendant's scheme. Thus, the mailings were not sufficiently closely related to the scheme to bring the defendant's conduct within the statute. *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

been violated if the fraudulent scheme has been consummated by the time the mailing occurs, and the mailing plays no role or only a minimal role in the execution of the scheme. *See, e.g., Parr,* 363 U.S. at 392–93, 80 S.Ct. at 1184, 4 L.Ed.2d at 1291–92; *United States v. Maze,* 468 F.2d 529, 532 (1972), *aff'd,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

■ This Court, must determine whether the mailings are sufficiently related to the scheme to defraud that a conviction under the mail fraud statute could be sustained. *United States v. Robinson,* 651 F.2d 1188, 1196 (6th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981). The Court concludes that this issue necessarily relies on a factual determination for resolution by the jury. The jury may find that the defendant breached a continuing duty to inform the farmers of the activities of the Blanton Smith Corporation, the negligence of the Springfield PCA, and his own conflict of interest. The jury may also find that the scheme's completion was dependent in some way on these "collection letters." *See United States v. Kent,* 608 F.2d 542, 546 (5th Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980). Accordingly, the Court finds that Counts Two and Three of the indictment sufficiently state a violation of 18 U.S.C. § 1341, and denies defendant's motion to dismiss these counts.

## C. Allegation of Conspiracy

■ Defendant also contends that Count Four of the indictment, which charges defendant with conspiracy under 18 U.S.C. § 371, must be dismissed because he relied in good faith upon federal regulations and therefore lacked the requisite intent for the substantive offense of mail fraud. This issue, also, must be resolved by the jury. As stated earlier, the Court is required only to give a jury instruction on good faith if there is any evidence to support this legal defense to mail fraud.[21] This issue is inappropriate for consideration on a motion to dismiss. Therefore,

**21.** *See* note 15 and accompanying text.

defendant's motion to dismiss Count Four of the indictment is denied.