[Cite as *State v. Petrone*, 2012-Ohio-911.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | William B. Hoffman, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2011CA00067 |
|  | : |  |
|  | : |  |
| ROBERT W. PETRONE | : | O P I N I O N |
| Defendant-Appellant |  |  |


CHARACTER OF PROCEEDING:      Criminal Appeal from Stark County Court of Common Pleas Case No. 2010-CR-1481

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 5, 2012

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
Stark County, Ohio

BY: KATHLEEN O. TATARSKY
 Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Ste. 510
Canton, Ohio  44702-1413

For Defendant-Appellant

JAMES L. BURDON
137 S. Main Street
Suite 201
Akron, Ohio  44308

THOMAS R. HOULIHAN
159 S. Main Street
Suite 1100
Akron, Ohio  44308

*Edwards, J.*

{¶1}  Appellant, Robert W. Petrone, appeals a judgment of the Stark County Common Pleas Court convicting him of felonious assault (R.C. 2903.11(A)(2)) with a firearm specification (R.C. 2941.145).  Appellee is the State of Ohio.

## STATEMENT OF FACTS AND CASE

{¶2}  Appellant graduated from Cuyahoga Falls High School in 1982.  He and his wife, Sue Petrone, lived in Cuyahoga Falls.  They separated in 2006 and Sue moved into a house on the same street as appellant.

{¶3}  Sue and appellant went to high school with Kevin Ciptak.  At a class reunion in 2007, Sue and Ciptak became reacquainted.  Ciptak was also separated from his wife at the time, and he and Sue began to date in an on-and-off relationship.

{¶4}  At a concert in 2008, Ciptak approached appellant.  Ciptak told appellant that he was a big and powerful man and was not afraid of appellant.  Appellant explained that there were problems in his marriage and asked Ciptak to leave his family alone unless he and Sue divorced.  Ciptak and appellant shook hands and parted ways.

{¶5}  While Ciptak was dating Sue, appellant continued to try to get back together with Sue and indicated to her that he was jealous of Ciptak.  He also told a friend that Ciptak was playing with fire.  During the summer of 2010 when Sue and Ciptak had stopped seeing each other, Sue and appellant spent a weekend together at Lake Erie.

{¶6}  In August of 2010, Sue and Ciptak began seeing each other again.  On Friday, September 17, 2010, she and Ciptak went to a concert together in Pittsburgh.  On Saturday, September 18, 2010, Sue hosted a bonfire at her home for her daughter's

volleyball team. Appellant came over to help with the bonfire. After falling asleep by the fire pit, appellant did not want to walk home so he crawled into bed with Sue and slept over.

{¶7} The next morning, appellant told Sue that a little birdie told him that Sue was with Ciptak on Friday night. When Sue told appellant it was none of his business, appellant became angry. Sue talked to him about getting a divorce, a conversation she estimated she had initiated at least a hundred times.

{¶8} Appellant returned home, intending to prepare his boat for winter storage and attend the Cleveland Browns game in Cleveland. He and Sue continued to text each other. Sue sent appellant a text which read, "As much as ud like 2 pt ur finger @ Kevin as the reason and prob ur wrong. I dnt want 2 b w you bcuz I want 2 b w him. He feels exactly like u do as far as being frustrated and upset w me. I think moving will be best 4 me. I hope u will support that wen the time comes." Tr. 296-297.

{¶9} Appellant went to the Browns game, while Ciptak watched the same game at Brubaker's Pub in Cuyahoga Falls. He asked Sue to meet him there. She arrived late, and Ciptak drank five beers while waiting for Sue to arrive. Sue and Ciptak had an argument at the bar and Sue left.

{¶10} Ciptak paid his bar tab and tried to call Sue on her cell phone. When she did not answer, he drove to her house. Sue did not answer the door. Ciptak drove by appellant's house, where appellant was outside raking leaves. According to appellant Ciptak gave him the finger, but Ciptak claimed he waved at appellant. Appellant decided that he needed to talk to Ciptak, and got in his truck to follow him.

{¶11} Ciptak proceeded to Route 8 South, headed toward a tree farm in Jackson Township which he needed to visit in connection with his employment in landscaping. He noticed appellant following him down 8 South and again on 77 South. He exited the highway at Arlington Road, and appellant followed. Ciptak pulled into a parking lot of a church that appeared to be holding services in an effort to lose appellant. Appellant did not pull into the church. After several minutes Ciptak left the church lot, but found appellant waiting for him at the next intersection.

{¶12} When Ciptak arrived at the tree farm, appellant did not follow him into the driveway. Ciptak found no one around the tree farm. As he began to leave the driveway, appellant was driving toward him. At this point, Ciptak became angry and got out of his vehicle, yelling at appellant, "What the bleep are you doing here. What the hell, you know, what are you trying to do?" Tr. 153.

{¶13} Appellant opened his door with one foot on the running board. Ciptak saw a gun pointed toward him and heard a popping sound.

{¶14} Donna Allen was de-burring her horses' manes and tails in her barn next to the tree farm. She heard someone yell, "What do you want, mother fucker?" several times. She then heard five or six rapid gunshots. While Allen's husband took the kids in the house and called 911, Allen grabbed some towels and went next door to administer first aid. Ciptak was on the ground bleeding profusely. He was conscious but in a lot of pain.

{¶15} Police arrived on the scene and Ciptak was able to identify appellant as the man who shot him. He was transported to Mercy Medical Center where he was treated by Dr. Peter Boutsicaris, a trauma surgeon. Dr. Boutsicaris observed a gunshot

wound in Ciptak's lower abdomen which was spurting blood, a gunshot wound to his upper left arm and a gunshot wound to his right hand. Ciptak was rushed into surgery to control the bleeding from his abdomen wound, which would have killed him in a matter of a few minutes to an hour. After reviewing the CAT scan, Boutsicaris determined that the bullet which caused the most injury entered Ciptak through the upper buttock area and exited through his abdomen, traveling back to front and right to left. Ciptak's blood alcohol level was determined to be .04.

{¶16} Later analysis of Ciptak's clothing revealed no gunshot residue, meaning he was beyond a range of six and a half to seven feet from the muzzle of the revolver when he was shot. Analysis of the fibers of the clothes Ciptak was wearing revealed that the back of his shirt showed signs of a bullet entrance, while the front of his shorts demonstrated a bullet exit.

{¶17} Meanwhile, appellant stopped at Sue's home and told her he was taking off for a few days to clear his head. He turned off his cell phone and took the battery out. Appellant headed to southern Ohio, thinking he would "chill out" at property he owned there. However, he changed his mind and decided to drive down I-70 to clear his head. He drove to Colorado, where he turned his phone on and called his father. His father told appellant to turn himself in. Appellant then drove to his daughter's home in Houston, Texas, where she urged appellant to turn himself in. He ultimately left his truck in a parking lot of a hotel in Winnie, Texas, and drove to Cincinnati with his daughter where his father picked him up. On September 22, 2011, appellant turned himself in at the Jackson Township Police Department.

{¶18} Appellant was indicted by the Stark County Grand Jury with attempted murder and felonious assault, both with firearm specifications. The case proceeded to jury trial in the Stark County Common Pleas Court.

{¶19} Appellant claimed self-defense at trial. Appellant is the holder of a concealed carry permit. He claimed that he feared Ciptak as a result of the incident at the concert in 2008 when Ciptak described himself as a big, powerful man. He testified that while he initially left his home on September 19, 2011 to follow Ciptak, when he couldn't find him in the neighborhood, he independently decided to drive to a roofing job he had off of Strausser Street in Jackson Township. He then noticed Ciptak turning right on Strausser when he needed to turn left to get to his job site, and decided it was an opportunity to talk with Ciptak and still visit his own job site. He turned to follow Ciptak instead of going to his own job site.

{¶20} Appellant testified that he was driving up the narrow drive of the tree farm when he saw Ciptak coming the other way. Ciptak jumped out of his truck. He testified that he told Ciptak to leave his family alone. Appellant testified that he opened the door of his truck and put his foot on the running board. He claimed Ciptak reached in the door with his right arm. Afraid of what Ciptak would do, appellant retrieved his pistol and shot three times from the cab of the truck at close range. Although a box cutter was later retrieved from Ciptak's pocket, appellant did not see the box cutter. Appellant claimed he drove away because he didn't know he hit Ciptak, he was just trying to scare him away.

{¶21} Appellant was acquitted of attempted murder but convicted of felonious assault with a firearm specification. He was sentenced to five years incarceration on

the felonious assault conviction and three years incarceration on the firearm specification.  He assigns five errors:

{¶22} "I. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE TRIAL COURT'S PREJUDICIAL REMARK EXPRESSING THE COURT'S PERSONAL OPINION THAT APPELLANT'S CASTLE DOCTRINE DEFENSE WAS IRRELEVANT.

{¶23} "II. THE TRIAL COURT MADE A CLEAR ERROR OF LAW IN FAILING TO PROPERLY INSTRUCT THE JURY ON THE STATUTORILY-CREATED CASTLE DOCTRINE.

{¶24} "III. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} "IV. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE TRIAL COURT'S ORDER DENYING APPELLANT ACCESS TO THE SWORN GRAND JURY TESTIMONY OF THE ALLEGED VICTIM, KEVIN CIPTAK, AND THEREAFTER PERMITTING THE PROSECUTION TO CROSS-EXAMINE APPELLANT WITH HIS OWN SWORN GRAND JURY TESTIMONY.

{¶26} "V. THE TRIAL COURT DENIED APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY REFUSING TO PERMIT THE TESTIMONY OF APPELLANT'S EXPERT REGARDING THE EFFECTS A GUNSHOT HAS UPON CLOTHING."

I

{¶27} In his first assignment of error, appellant argues the court improperly commented on his statutory defense known as the Castle Doctrine.  During re-direct

examination of appellant's expert witness, Daniel Clevenger, the following colloquy occurred:

{¶28} "MR. O'BRIEN:

{¶29} "Q. The Attorney General's book talks about the Castle Doctrine; does it not?

{¶30} "A. Yes, sir, it does.

{¶31} "Q. All right. Explain the Castle Doctrine.

{¶32} "MS. HARTNETT: Objection.

{¶33} "THE COURT: Sustained.

{¶34} "BY MR. O'BRIEN:

{¶35} "Q. Does the book that the Attorney General puts out, does it include the information that a person does not have a duty to retreat?

{¶36} "MS. HARTNETT: Objection.

{¶37} "THE COURT: Sustained. Has no relevance to this case.

{¶38} "MR. O'BRIEN: Understood."

{¶39} Clevenger teaches a concealed carry permit class to civilians. However, appellant did not take classes from Clevenger.

{¶40} Generally, in determining whether a trial judge's remarks were prejudicial: (1)the burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of

the effectiveness of counsel. *State v. Wade* (1978), 53 Ohio St.2d 182, 188, 373 N.E.2d 1244, 1248.

{¶41} However, appellant failed to object, and in fact stated that he understood. The failure to object constitutes a waiver of the error, because absent an objection, the trial judge is denied an opportunity to give corrective instructions. Id. at 1248-1249, citing *State v. Williams* (1974), 39 Ohio St.2d 20, 313 N.E.2d 859; *State v. Childs* (1968), 14 Ohio St.2d 56, 236 N.E.2d 545; *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 233 N.E.2d 137. See, also, *United States v. Gaines* (C.A.3, 1971), 450 F.2d 186, certiorari denied, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 801; *United States v. Bessesen* (C.A.8, 1970), 433 F.2d 861, certiorari denied, 401 U.S. 1009, 91 S.Ct. 1254, 28 L.Ed.2d 545.

{¶42} Appellant has not demonstrated prejudice from this isolated comment. We first note that it is not clear whether the trial judge is commenting that the Castle Doctrine is irrelevant, or, more likely, that what the Attorney General's book states about the Castle Doctrine is irrelevant, particularly as appellant did not take his classes from Clevenger. The trial court gave a general curative instruction that the jury was to disregard anything the court said or did which they might consider an indication of the court's view of the facts. Tr. 780. Further, it is clear from the lengthy instructions the court gave to the jury concerning the application of the doctrine of self defense and the Castle Doctrine that the jury was made aware that the Castle Doctrine was very much relevant to the instant case. Appellant has not demonstrated prejudice from this single isolated comment.

{¶43} The first assignment of error is overruled.

II

{¶44} In his second assignment of error, appellant argues that the court erred in its instructions to the jury concerning self defense and the Castle Doctrine. Appellant argues that the court erred by giving the Castle Doctrine instruction after, rather than before, the common law self defense instruction. He argues that the instructions as given by the court fail to make it clear that under the statutory Castle Doctrine, he could have been acquitted without demonstrating that he was not responsible for creating the affray leading to the shooting and that he was in imminent fear of bodily harm or death. He argues that the self defense instruction was a "six-page word salad, which did nothing but confuse the jury."

{¶45} The trial court instructed the jury as follows concerning self defense:

{¶46} "Now, self-defense. The Defendant claims to have acted in self-defense. To establish a claim of self-defense, the Defendant must prove, by the greater weight of the evidence, all of the following: Number one, that he was not at fault in creating the situation giving rise to the incident involving the shooting of Kevin Ciptak.

{¶47} "And, number two, he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm, and that his only reasonable means or response to such danger was by the use of deadly force.

{¶48} "And, number three, that he had not violated any duty, if he's required to have a duty, to retreat to avoid the danger.

{¶49} "Now, words alone do not justify the use of deadly force. Resort to such force is not justified by abusive language or verbal threats or other words, no matter how provocative.

{¶50} "In deciding whether the Defendant had reasonable grounds to believe and an honest belief that he was in immediate danger of death or great bodily harm, you must put yourself in the position of the Defendant with his circumstances, his knowledge, or lack of knowledge, and under the circumstances and conditions that surrounded him at the time.

{¶51} "You must consider the conduct of Kevin Ciptak and decide whether his acts and words caused the Defendant to reasonably and honestly believe that he was about to be killed or receive great bodily harm.

{¶52} "If the Defendant used more force than was reasonably necessary and if the force used is greatly disproportionate to the apparent danger, then the defense of self-defense is not available.

{¶53} "Now, there is no duty to retreat required if the Defendant is lawfully an occupant of his vehicle or of a vehicle owned by his immediate family member. If the Defendant is such a lawful occupant of the vehicle, he has no duty to retreat before using force in self-defense. The Defendant must, however, still meet the other requirements for acting in self-defense. He would not, however, have a duty to retreat if he is a lawful occupant; of the vehicle. Remember we gave you the three tests? That's just the third one. The duty to retreat is what this instruction deals with.

{¶54} "Now, the Defendant had a duty to retreat if he was at fault in creating the situation giving rise to the attempt of murder of Kevin Ciptak, or he did not have

reasonable grounds to believe and an honest belief that he was in immediate or - - imminent or immediate danger of death or great bodily harm, or that he had a reasonable means to escape from that danger other than by the use of deadly force.

{¶55} "The Defendant no longer had a duty to retreat if he retreated from the situation or reasonably indicated his intention to retreat from the situation and no longer participated in it and he had reasonable grounds to believe and an honest belief that he was in imminent danger of death or great bodily harm, and the only reasonable means to escape from that danger was by the use of deadly force even though he was mistaken as to the existence of that danger.

{¶56} "Now, these instructions all just deal with the duty to retreat. And when you sit down, you're going to have to read through these because you want to look through those again.

{¶57} "But, again, I want to reemphasize to you that he has no duty to retreat if he is lawfully an occupant of his vehicle or a vehicle owned by his immediate family member, and if he's the - - Defendant is such a lawful occupant of the vehicle under Ohio law, he has no duty to retreat before using force and self-defense.

{¶58} "However, the Defendant must, however, still meet the other requirements other than the duty to retreat for acting in self-defense. He would not, however, have a duty to retreat if he's a lawful occupant of the vehicle.

{¶59} "Now, let's move down. We're halfway on the next page where it says presumption. The Defendant is presumed to have acted in self-defense if you find that the Defendant has shown all of the following by a preponderance of the evidence.

{¶60} "Number one, that the Defendant was in a vehicle lawfully, and we mean his vehicle lawfully. That's been the testimony here is that it was his vehicle.

{¶61} "Number two, that Kevin Ciptak did not have a right to be in said vehicle.

{¶62} "And that Kevin Ciptak was in the process of entering or had entered the vehicle unlawfully when the Defendant used the defensive force.

{¶63} "If you find that the Defendant is entitled to the presumption, as outlined above, the State of Ohio may rebut such presumption if the State demonstrates by a preponderance of the evidence any of the following: The Defendant was at fault in creating the situation giving rise to the shooting incident involving Kevin Ciptak, or the Defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm, and that his only means of response to such danger was by the use of deadly force, or the Defendant violated any duty to retreat, as previously defined, to avoid the danger.

{¶64} "However, there is no duty to retreat if the Defendant was lawfully an occupant of the vehicle.

{¶65} "If the State of Ohio rebuts the presumption, if that presumption arises and if the State rebuts that presumption by a preponderance of the evidence, then the Defendant is not entitled to a presumption that he acted in self-defense.

{¶66} "However, the Defendant may be entitled to the affirmative defense of self-defense if he proves all of the elements of said defense as previously defined in this instruction by a preponderance of the evidence." Tr. 759-765.

{¶67} Before trial, the court provided counsel with the instructions he intended to give to the jury concerning self defense. Tr. 2/23/11, 35-36. Appellant did not offer

alternative instructions, nor did he object to the court's instructions as given at trial. Crim. R. 30(A) provides that on appeal, a party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict. Because appellant failed to object, we must find plain error in order to reverse. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long,* supra. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶68} The Castle Doctrine has been codified by R.C. 2901.05(B):

{¶69} "(B)(1) Subject to division (B)(2) of this section, a person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force….

{¶70} "(B)(3) The presumption set forth in division (B)(1) of this section is a rebuttable presumption and may be rebutted by a preponderance of the evidence."

{¶71} To prevail on a common law self defense claim, the offender must demonstrate that he was not at fault in creating the situation giving rise to the affray; he had a *bona fide* belief that he was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of such force; and he

must not have violated any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, at 80.

{¶72} While the instructions as given to the jury were somewhat convoluted and it perhaps would have been clearer to give the Castle Doctrine instruction before the common law self defense instruction, the instructions as given did include all elements of both the common law self defense claim and the Castle Doctrine defense as outlined in R.C. 2901.05(B).

{¶73} Appellant has not demonstrated that he would have been acquitted had the Castle doctrine instruction been given first. First, the jury could easily have found that the statutory Castle doctrine was not applicable due to the contradictory evidence regarding whether the victim ever entered appellant's vehicle. In the instant case, while appellant testified that Ciptak reached inside the cab of the truck, appellant had opened the door and had one foot on the running board. There was no evidence that Ciptak tried to enter the vehicle other than appellant's testimony that he reached inside the cab. Further, the forensic evidence demonstrated that appellant shot Ciptak in the back, from a distance of greater than six and a half to seven feet. Second, even if the jury concluded that the Castle doctrine was applicable, R.C. 2901.05(B)(3) provides that the presumption that a defendant acted in self-defense may be rebutted by the prosecutor by a preponderance of the evidence. Appellant admitted that he followed Ciptak to his job site at the tree farm, intending to confront him about the issues surrounding their respective relationships with his estranged wife. The jury could have found that by appellant's own testimony, the presumption of self-defense provided by R.C. 2901.05(B)(2) was rebutted, as he was at fault in creating the situation giving rise

to the shooting. In addition, the jury could have found that the presumption was rebutted because the appellant did not have reasonable grounds to believe he was in imminent danger of death or great bodily harm and/or that appellant's only reasonable response was the use of deadly force. While a box cutter was later found on Ciptak's person, appellant did not see the box cutter before he shot Ciptak. Further, as stated above, forensic evidence indicated that appellant shot Ciptak in the back from over six feet away.

{¶74} The second assignment of error is overruled.

III

{¶75} Appellant argues that the judgment of conviction is against the manifest weight of the evidence. Felonious assault is defined by R.C. 2903.11(A)(2):

{¶76} "(A) No person shall knowingly do either of the following"

{¶77} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶78} Appellant's sole argument is that the jury lost its way in failing to acquit him based on self defense, either as an affirmative defense under common law or pursuant to R.C. 2901.05(B).

{¶79} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678

N.E.2d 541, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶80} To prevail on a common law self defense claim, the offender must demonstrate that he was not at fault in creating the situation giving rise to the affray; he had a *bona fide* belief that he was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of such force; and he must not have violated any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, at 80.

{¶81} Appellant has not demonstrated that the jury lost its way in failing to acquit him on this affirmative defense. There was evidence that appellant followed Ciptak to the tree farm, intending to confront him about Ciptak dating his estranged wife. Earlier that day, appellant had asked Sue about seeing Ciptak that weekend, and she had responded by engaging him in a conversation about getting a divorce. She sent appellant a text earlier that day stating that she wanted to be with Ciptak. The only evidence appellant presented that he had a bona fide belief that he was in imminent danger of death or great bodily harm was his testimony that two years earlier, Ciptak had confronted him in an intimidating manner at a concert and Ciptak told appellant he was a big, powerful man. However, the two parted with a handshake that day and did not have a physical altercation. Appellant testified that Ciptak reached inside the cab of the truck, and that's why he shot at Ciptak, intending to scare him. However, he admitted that Ciptak did not have a visible weapon, that he himself had opened the door, and that he had one foot on the running board. The forensic evidence

demonstrated that Ciptak was shot in the back from a distance of greater than six and a half or seven feet.

{¶82} R.C. 2901.05(B) provides:

{¶83} "(B)(1) Subject to division (B)(2) of this section, a person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force."

{¶84} This presumption may be rebutted by the state. R.C. 2901.05(B)(3).

{¶85} Appellant has not demonstrated that the jury lost its way in failing to find he was entitled to this statutory presumption. The only evidence that Ciptak was attempting to enter the vehicle was appellant's testimony that Ciptak reached inside the cab. According to Ciptak's testimony, when he walked to the front of his own truck at the passenger side, he could see that appellant's truck door was open and he saw a gun pointed at him. Ciptak testified that he never got close to appellant's truck because he saw the gun pointed at him. Ciptak's testimony is consistent with the forensic testimony concerning the distance from which he was shot.

{¶86} The third assignment of error is overruled.

IV

{¶87} In his fourth assignment of error, appellant argues that the court erred in failing to disclose Ciptak's grand jury testimony to him, and in allowing the State to use his own grand jury testimony to impeach him.

{¶88} As to appellant's claim that the court erred in allowing the State to use his own grand jury testimony to impeach him, appellant did not object at trial, and therefore we must find plain error to reverse. *Long*, supra. Not only did appellant fail to object at trial, but counsel recognized at an earlier hearing that while he had to show particularized need to obtain grand jury testimony of Ciptak, if the defendant testifies at the grand jury, "that's pretty much fair game." Tr. 2/23/11, p.22.

{¶89} This Court has previously recognized that pursuant to Ohio law, the State need not show particularized need in order to use grand jury testimony to cross-examine defense witnesses:

{¶90} "On the other hand, the State argues that the prosecution may use grand jury testimony to impeach defense witnesses. *See State v. Patterson* (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, 1998 WL 310737; *State v. Mastronardi* (Dec. 5, 1997), Erie App. No. E-96-033, unreported, 1997 WL771575; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 550, 679 N.E.2d 321. These cases stand for the proposition that the state is free to use the testimony for impeachment and that once the grand jury testimony is used for impeachment, the grand jury testimony of that witness must be released to the defendant. *Hopfer, supra.* These cases cite to no requirement that the State show particularized need *prior* to using grand jury testimony to impeach a defense witness." *State v. Gibbons* (March 30, 2000), Stark App. No. 1998CA00158, unreported.

{¶91} Appellant has not demonstrated error, plain or otherwise, in the State's use of his own grand jury testimony on cross-examination.

{¶92}  Appellant also argues that the court erred in overruling his motion for disclosure of Ciptak's grand jury testimony.

{¶93}  The release of grand jury testimony for use prior to or during trial is within the sound discretion of the trial court. *State v. Coley* (2001), 93 Ohio St.3d 253, 261, 754 N.E.2d 1129.

{¶94}  In *State v. Greer,* the Supreme Court of Ohio stated, "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Greer* (1981), 66 Ohio St.2d 139, 20 O.O.3d 157, 420 N.E.2d 982, paragraph two of the syllabus. A particularized need is established "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial" of the allegations placed in issue by the witnesses' testimony. *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, quoting *State v. Sellards* (1985), 17 Ohio St.3d 169, 173, 17 OBR 410, 478 N.E.2d 781. *State v. Hernandez* (Mar. 29, 1991), Columbiana App. No. 87-C-56, 1991 WL 44362; and *State v. Dillon,* Darke App. No. 05CA1674, 2006-Ohio-4931, 2006 WL 2709704.

{¶95}  Impeachment through material inconsistencies may be a proper basis for disclosure of grand jury testimony, but that purpose alone is not sufficient. *State v. Patterson* (1971), 28 Ohio St.2d 181, 57 O.O.2d 422, 277 N.E.2d 201; *Hernandez.* The claim that a witness's grand jury testimony may differ from trial testimony is insufficient to show a particularized need. *State v. Henness* (1997), 79 Ohio St.3d 53, 62, 679 N.E.2d 686.

{¶96}  Appellant argues that he was entitled to the grand jury testimony of Ciptak because such testimony may have contained inconsistent statements and because the State used appellant's grand jury testimony in cross-examination.  The trial court did not abuse its discretion in overruling appellant's motion for disclosure.  Appellant argued to the trial court that there were a lot of inaudible parts in the two recorded statements Ciptak gave at the hospital, and he might have said something different before the grand jury than what he said in these statements.  Tr. 23.  This request was nothing more than a fishing expedition for possible inconsistencies.  Appellant did not demonstrate particularlized need based on a showing that there was a reason to suspect material inconsistencies.  As noted earlier, the State was entitled to use appellant's grand jury testimony once appellant agreed to testify before the grand jury. The State's use of appellant's grand jury testimony did not give appellant a particularized need for Ciptak's testimony.

{¶97}  The fourth assignment of error is overruled.

V

{¶98}  In his final assignment of error, appellant argues that the court erred in not allowing his witness to testify about clothing Ciptak was wearing at the time he was shot.

{¶99}  Thomas Procaccio, the owner of a gun store and shooting range, testified for the defense.  When asked a question as to the clothing Ciptak was wearing, the State objected on the grounds that he was not qualified as an expert regarding clothing. The trial court agreed and told defense counsel to go ahead and attempt to establish his credentials.

{¶100} On further examination, Procaccio testified that he has many times tested gunshot penetrations through clothing. He had no academic training in such analysis. He testified that he had never before testified as a firearms expert in court. The trial court found that he had not established expertise in clothing because he had not shown anything that he had done scientifically. The court again told counsel that he could continue to try to establish Procaccio's credentials. Procaccio testified that he had tested different types of ammunition to determine what kind of defects they caused on clothing by attaching clothing to hams and big pieces of roast beef to determine what the reaction is when the bullet goes in one side and out the other. He testified that he examined Ciptak's clothing at the prosecutor's office.

{¶101} Appellant now claims that Procaccio was called as an expert to refute the testimony that Ciptak was shot in the back. However, appellant did not proffer this testimony.

{¶102} A party may not predicate error on the exclusion of evidence unless two conditions are met: (1) the exclusion of such evidence must affect a substantial right of the party and (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked. *State v. Gilmore* (1986), 28 Ohio St.3d 190, 191, 503 N.E.2d 147. In the instant case, the substance of the excluded evidence was not proffered, nor is it apparent from the context within which the questions were asked. The questions to which objections were sustained related to whether the person wearing the t-shirt may have had it tucked into his shorts, and whether there were defects in the clothing. The remaining testimony of

Procaccio concerning what those defects might be and what they indicated concerning the shooting is not apparent from the questions themselves.

{¶103} Further, appellant has not demonstrated that the court erred in finding Procaccio was not an expert in clothing analysis. Evid.R. 104(A) provides that preliminary questions concerning the qualification of a person to be a witness must be determined by the court. A trial court's ruling on the witness's qualification or competency to testify as an expert will ordinarily not be reversed on appeal unless there is a clear showing that the court abused its discretion. *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 383 N.E.2d 564*; Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 131 N.E.2d 397. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482-483, 450 N.E.2d 1140, 1142, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144.

{¶104} Procaccio testified that he had no formal training in analysis of gunshot defects in clothing. His experience was based on testing certain types of ammunition by attaching clothing to hams, large pieces of roast beef and other items and observing the reaction in the clothing. He had never testified as an expert witness. While the trial court allowed him to testify based on his experience in some areas of ballistics, the court did not abuse its discretion in finding that he was not an expert in the area of gunshot defects in clothing.

{¶105} The fifth assignment of error is overruled.

{¶106} The judgment of the Stark County Court of Common Pleas is affirmed.


By: Edwards, J.

Hoffman, P.J. and

Wise, J. concur

_____

_____

_____

                                    JUDGES

JAE/r1201

[Cite as *State v. Petrone*, 2012-Ohio-911.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
           Plaintiff-Appellee     :
                                       :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
ROBERT W. PETRONE                      :
                                       :
        Defendant-Appellant     :        CASE NO. 2011CA00067


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.


_____


_____


_____

JUDGES