[Cite as *State v. Petrone*, 2013-Ohio-1138.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 2012CA00096 |
| ROBERT W. PETRONE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No. 2010CR1481

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      March 18, 2013

APPEARANCES:

For Appellant:

NICHOLAS SWYRYDENKO
137 South Main St.
Suite 206
Akron, OH 44308

For Appellee:

JOHN D. FERRERO, JR.
STARK COUNTY PROSECUTOR
KATHLEEN O. TATARSKY
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Delaney, P.J.*

{¶1} Appellant Robert W. Petrone appeals from the April 18, 2012 Judgment Entry of the Stark County Court of Common Pleas overruling his motion for leave to file a motion for new trial on the basis of newly-discovered evidence. Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} This case arose on September 19, 2010 when appellant shot Kevin Ciptak multiple times in the driveway of a tree farm in Jackson Township, Stark County, Ohio. Appellant was ultimately convicted of one count of felonious assault with a gun specification, and was acquitted of one count of attempted murder.

{¶3} We have thoroughly reviewed the entire record as we are required to do when reviewing a trial court's decision upon a motion for new trial. In appellant's first direct appeal, we related the circumstances of the parties' relationships and the facts leading up to the shooting of Kevin Ciptak. *State v. Petrone*, 5th Dist. No. 2011CA00067, 2012-Ohio-911. The facts as related here focus more specifically on those relevant to appellant's motion for leave to file a delayed motion for new trial.

### The Events of September 19, 2010

{¶4} Appellant and his wife, Sue Petrone, have been separated since 2006. Both attended high school with Kevin Ciptak. After the separation, Sue Petrone and Ciptak had an on-and-off dating relationship. Appellant and Sue Petrone have children together and although they live in separate households, they live on the same street in the same subdivision in Cuyahoga Falls, Ohio, about six houses away from each other.

{¶5}   On September 19, 2010, Ciptak went to Brubaker's Pub to watch the Cleveland Browns game that started at 1:00 p.m.  Sue Petrone came to meet Ciptak late in the game and the two got into an argument.  Sue Petrone left Brubaker's; Ciptak stayed briefly to pay his bill.

{¶6}   Upon leaving the bar, Ciptak decided to drive by Sue Petrone's home to "smooth things over" after the argument.  Sue Petrone was home but had her house "buttoned up" to look as though no one was home.  Ciptak drove by and continued on past appellant's house.

{¶7}   Appellant was outside, having come home early from the Browns game. Ciptak later said he waved at appellant; appellant said Ciptak "gave him the finger." Either way, shortly after Ciptak drove by, appellant decided to follow him.

{¶8}   Ciptak was traveling to a tree farm on Strausser Road in Jackson Township, Ohio.  He planned to tag trees he needed later for a landscaping job.  His route from Cuyahoga Falls took him south on Route 8.  In downtown Cuyahoga Falls, he first noticed appellant in his vehicle behind him.  Ciptak proceeded south on Interstate 77, and appellant followed.  Ciptak exited at Arlington Road with appellant still behind him.  Ciptak ignored appellant, assuming at some point he would turn back.  Ciptak came to a church parking lot on Arlington Road and pulled in to attempt to get appellant "off his back."  Appellant did not follow him into the lot, and instead proceeded straight on Arlington.  Ciptak turned around in the rear of the church parking lot and exited.

{¶9}   Ciptak saw appellant waiting for him at the next intersection.  Appellant again fell in behind Ciptak, following him from a distance of 5 to 8 car lengths south on

Arlington Road. Ciptak drove to Strausser and turned right, pulling into the tree farm a short distance up the road. Appellant continued straight on Strausser and did not follow Ciptak into the driveway.

{¶10} Ciptak drove down the long, narrow lane of the tree farm, observing dense trees, a residence, and a barn. No one was around and Ciptak didn't feel comfortable getting out to tag trees as he had planned to do. When he reached the barn, he backed up and turned around to head back out the driveway.

{¶11} He met appellant in his vehicle coming down the driveway. The two trucks stopped, "head to head." Appellant's vehicle was about 6 to 8 feet away. Ciptak put his truck in park and got out, screaming, "What are you trying to do? What do you want?" Ciptak walked in front of his truck.

{¶12} Appellant's driver's door was open. Ciptak later testified he saw the door open and saw a gun pointed at him, but appellant never said a word. Ciptak looked at the gun and heard a popping sound. He fell to the ground, and felt enormous pain.

*The Neighbor's Account*

{¶13} Donna Allen lives at 8821 Strausser Road NW, Massillon (Jackson Township), which is next door to Haines Tree Farm. Allen's property is separated from the tree farm by a wooden fence and a line of mature white pines. Her driveway is parallel to the tree farm driveway.

{¶14} On September 19, 2010, Allen was in a barn on her property, next to the line of white pines, grooming her horses. Allen heard a truck in the tree farm driveway, which was slightly unusual because it was Sunday. She heard someone

yelling "What do you want, m-fer" several times. Immediately after that, as Allen described it, she heard five or six gunshots very quickly.

{¶15} Allen had stepped out of her barn to ask the unknown persons to keep it down because her kids were around, but when she heard the gunshots, she went back into the barn, gathered her kids, and directed her husband to call 911.

{¶16} Allen saw a white truck with a utility cap, later identified as appellant's vehicle, quickly back out of the tree farm driveway. Her husband went to the tree farm to check out the scene and told her someone was hurt. Allen and her husband administered first aid to Ciptak, whom they found on the ground alive and conscious but seriously injured.

*The Aftermath of the Shooting*

{¶17} When first responders arrived, Ciptak was able to tell them he had been shot by appellant. Ciptak was hospitalized for three weeks, having been shot in the hand, biceps, and stomach. He has lasting nerve damage to his hand and at the time of trial was still in occupational therapy.

{¶18} Appellant, meanwhile, fled the area immediately after the shooting. He stopped in Cuyahoga Falls and briefly made contact with his wife and daughter, alarming Sue Petrone when he told her "it's over." She was not yet aware Ciptak had been shot when appellant gave her the combination to a safe before leaving in his truck. She found this unusual and feared appellant was suicidal. Appellant subsequently traveled to Colorado and Texas before ultimately surrendering at the Jackson Township Police Department.

*The Forensic Evidence*

{¶19} Appellee called forensic scientist Michael Short of the Stark County Crime Lab as an expert witness at trial. The forensic evidence indicated Ciptak's clothing contained a number of bullet defects. His shirt contained three: one at the lower hem to the right of the center (bullet entrance); an L-shaped defect on lower left front of shirt to the left of center (bullet exit); and an elongated defect slightly below and to the left of the second defect (bullet exit). Ciptak's shorts contained a bullet defect in the front, exhibiting the physical effects of a bullet exit: a linear defect with fibers protruding from the inside out, as though stretched by passage of the bullet.

{¶20} Short further testified over objection that Ciptak's wounds were consistent with the conclusions he drew from the clothing. Appellee's Exhibit 3A depicted the wound to Ciptak's abdominal region, an "elongated, irregular defect" typical of an exit wound. Appellee's Exhibit 3B depicted the wound to his hip/buttock region. Short testified this injury is a circular defect indicative of the circular defect in the back of the shirt.

*The Trial Testimony of Dr. Boutsicaris*

{¶21} Dr. Peter S. Boutsicaris is a trauma surgeon at Mercy Medical Center who treated Ciptak on September 19, 2010. Boutsicaris noted an open bleeding wound to the left lower abdomen spurting blood; a bleeding gunshot wound to the left upper arm; and a gunshot wound to the right hand. When Boutsicaris encountered Ciptak initially, the patient was "extremely critically ill" and was going into shock. He was brought into surgery immediately. Ciptak would otherwise have died of blood loss

due to the active bleeding in his belly. Boutsicaris testified that multiple surgeons worked on Ciptak to get his injuries under control.

{¶22} Boutsicaris testified he is a trauma surgeon and as such his primary focus in treating a patient is doing what is necessary to save a life. He does, however, try to "guess" which way a bullet may have traveled inside the body for purposes of treatment to determine what may have been injured in the bullet's path. In this case, Ciptak sustained an injury to his right back side and left lower abdomen which he attributed to the path of a single bullet. At the time of treatment, entrance versus exit was not relevant to Boutsicaris' immediate lifesaving measures and thus his notes were not precise. He emphasized that he is not trained in forensics.

{¶23} At trial, however, Boutsicaris testified on direct he had reviewed the x-rays again on the morning of trial, commenting that his notes were conflicting so he wanted to take another look. He stated he reviewed Ciptak's CAT scan from September 20 and determined the bullet entered back to front, right to left, based upon several factors: bone fragments pushing inward toward the belly, two metal fragments in the middle of the belly, placement of the buttock wound higher than the belly wound, and the general positioning of the wounds consistent with the hand wounds.

{¶24} Boutsicaris repeatedly stated his conclusions were based upon supposition:

> * * * *.
>
> [Dr. Boutsicaris:] So—and the other thing I paid attention to is on
>
> the CAT scan, it's like looking at a slice –a bunch of sliced

bologna where you're looking at the body in slices going from top to bottom.

And the one wound, the pelvic wound, the one—or the upper buttock was up high, and the one on the belly was down low which means the bullet would go high to low.

Well, assuming two adults are involved in something and a person tends to shoot at waist level or higher, the natural tendency if a bullet's going to enter is if it's going to hit the buttock, it's going to go and it's like a downward pathway. So you got a bullet going downward unless the person was on the ground shooting upwards which doesn't make sense.

So the probabilities if two people are standing, bullet entering the buttock, going downward and the bullet and the fragments, everything points towards the entry being the pelvis on the right side and exiting the left abdomen.

[Prosecutor:] Okay. So, in other words, back to front?

[Dr. Boutsicaris:] Back to front.

[Prosecutor:] And right to left?

[Boutsicaris:] Right. And that goes along with the hand injuries, too.

[Prosecutor:] And that is in spite of the fact that the records refer to entry and exit both ways?

[Boutsicaris:]    Yeah, I would say I was wrong in my initial impression because I—the guy comes in, I'm looking at the bleeding through the front and I'm not measuring the holes.  And usually people get shot facing each other.  So that's, you know, supposition.

[Prosecutor:]  Okay.  If you were to learn that a forensic expert had analyzed other evidence and come to the conclusion it was back to front—

[Defense Trial Counsel:]  Objection, Your Honor.

The Court:  Overruled.

[Prosecutor:]  --would you have any reason to disagree with that I guess based on your analysis of the medical records?

[Dr. Boutsicaris:]  I don't have an opinion on that because I've never really had to analyze forensic evidence in comparison to what I do in my practice.  So I've no experience in that so I really can't say what I would say.  I would have to look at the report to see if it fit my medical opinion.

* * * *.

*Appellant Claims He Fired in Self-Defense*

{¶25} Appellant testified on his own behalf at trial and presented a theory of self-defense.  He related an incident in 2008 in which Ciptak approached him at an outdoor public event, asked what his problem was, and said he (Ciptak) was a "big powerful man."  No physical confrontation occurred.

{¶26} Regarding the incident on September 19, 2010, appellant said it began when Ciptak drove past his house and gave him the finger. Appellant decided he wanted to talk to Ciptak and admittedly followed him. Appellant claimed that when Ciptak pulled into the church parking lot, he did not intend to stalk him further but remained in the area because he, too, planned to check out a work site in the Jackson Township area. He admitted, though, that he saw Ciptak pull into the tree farm driveway, and he pulled into the neighboring driveway, turned around, and then entered the tree farm driveway himself.

{¶27} Appellant claimed he came slowly down the driveway and saw Ciptak as he crested a small hill, coming at him. Appellant said Ciptak "lunged" at him, catching him by surprise. Appellant stopped. Ciptak got out of his truck but appellant remained inside his. Appellant said Ciptak cursed at him, screaming, crossed in front of his vehicle and came up on appellant's driver's side. Appellant said "Leave me and my family alone," but Ciptak came up to his door. Appellant claimed he told Ciptak to back off but Ciptak persisted and reached into appellant's door, which was partly open. Appellant testified he grabbed his pistol, calm but cautious, describing Ciptak as enraged. Appellant testified that when Ciptak reached into the truck, he pulled the trigger, firing three shots without deliberation.

{¶28} Appellant further stated after the shots were fired, Ciptak was able to turn and run back to his vehicle. Appellant thought he was going to grab a weapon and so appellant backed out of the driveway and left. He claimed to have no idea his shots struck Ciptak; he didn't intend to physically confront Ciptak and only fired the gun to scare him. He did not call for help.

{¶29} Appellant described his flight after the shooting as a trip to "get his head clear." He said he turned his cell phone off because he didn't want to talk to anyone, and was unaware Ciptak had been wounded. He had problems with his truck in Houston but did eventually turn himself in to the Jackson Township Police Department.

*Indictment, Conviction, Appeal, and Motion for Leave to File*
*Delayed Motion for New Trial*

{¶30} Appellant was charged by indictment with one count of attempted murder [R.C. 2903.02(A)/2923.02(A), a felony of the first degree] with a firearm specification [R.C. 2941.145] and one count of felonious assault by means of a deadly weapon or dangerous ordnance [R.C. 2903.11(A)(2), a felony of the second degree] with a firearm specification [R.C. 2941.145]. Appellant entered pleas of not guilty and the case proceeded to jury trial, whereupon appellant was found not guilty of attempted murder with a firearm specification and guilty of felonious assault with a firearm specification. The trial court sentenced appellant to an aggregate prison term of eight years.

{¶31} Appellant appealed from the judgment entry of his conviction and sentence, raising five assignments of error. We affirmed the conviction in *State v. Petrone*, 5th District No. 2011CA00067, 2012-Ohio-911, appeal not allowed, 132 Ohio St.3d 1463, 2012-Ohio-3054, 969 N.E.2d 1231.

{¶32} On February 17, 2012, appellant filed an "Application for Leave to File Delayed Motion for New Trial (Hearing Requested)" on the grounds of newly-discovered evidence. As new evidence, appellant cited "the analysis of the medical records of [victim] Mr. Ciptak and the opinion therefrom stated in the affidavit of Daniel

J. Spitz, M.D., a Forensic Pathologist and Toxicologist, and the testimony that Dr. Spitz would offer based upon his review and analysis of the substantial medical evidence regarding….[Ciptak's injuries]." Appellant asserted the evidence was discovered in the course of preparation for civil litigation. Appellant summarized the newly-obtained evidence thusly: "In his affidavit, Dr. Spitz concludes…that to a reasonable degree of medical/scientific certainty, the stomach-to-bullet wound received by Ciptak entered from the stomach and exited through the buttock, in diametric opposition to Dr. Boutsakaris's (*sic*) testimony at trial." Application for Leave to File Delayed Motion for New Trial (Hearing Requested), 5. Dr. Spitz's affidavit asserts it is based upon his review of exhibits from the underlying criminal case, including the photographs of Ciptak, Ciptak's medical records, his radiologic records, a "trial testimony summary," and portions of the trial testimony of Ciptak and Dr. Boutsicaris. The motion also includes an article from the JAMA, April 28, 1993, Vol. 269, No. 16, entitled "Clinicians' Forensic Interpretations of Fatal Gunshot Wounds Often Miss the Mark."

{¶33} The State responded with a motion in opposition and appellant replied.

{¶34} On April 18, 2012, the trial court overruled appellant's motion.

{¶35} Appellant hereby appeals from the trial court's judgment entry.

{¶36} Appellant raises one[1] Assignment of Error:

---

[1] Appellant makes two additional arguments, not separately assigned as error, and barred by res judicata. He alleges the trial court improperly instructed the jury with respect to self-defense and the Castle Doctrine, and asserts he received ineffective assistance of trial counsel for, e.g., failure to obtain an expert witness to contradict Dr. Boutsicaris, failing to request a continuance, and failing to object to the trial court's jury instructions. We decline to substantively address these arguments not properly before us. See App.R. 12(A)(1)(b); 16(A)(3)

{¶37} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL, AND IN THUS DENYING REVIEW OF THE SUBSTANTIVE AND LEGAL MERITS OF A MOTION FOR NEW TRIAL."

I.

{¶38} Appellant argues the trial court erred in denying his motion for leave to file a motion for new trial. We disagree.

{¶39} Crim.R. 33 governs new trials. A motion for a new trial made pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court, and may not be reversed unless we find an abuse of discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). An abuse of discretion implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987).

{¶40} Under Crim.R. 33(A)(6), a new trial may be granted when "new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Subsection (B) of Crim.R. 33 states, in relevant part, as follows:

> Application for a new trial shall be made by motion which, except
> for the cause of newly discovered evidence, shall be filed within
> fourteen days after the verdict was rendered, or the decision of the
> court where a trial by jury has been waived, unless it is made to
> appear by clear and convincing proof that the defendant was
> unavoidably prevented from filing his motion for a new trial, in

which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

"[A] party is 'unavoidably prevented' from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (1984).

{¶41} In this case, appellant based his motion on allegedly newly-discovered evidence. Crim.R. 33(B) provides that motions for new trial on account of newly-discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered or from the trial court's decision unless "it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely." Thus, an untimely motion for new trial based on newly discovered evidence must show, by clear and convincing proof, that the defendant was "unavoidably prevented" from discovering the new evidence. *State v. Fortson*, 8th Dist. No. 82545, 2003-Ohio-5387 at ¶ 10.

{¶42} Appellant's argument to the trial court and upon appeal centers upon whether the third bullet to strike Ciptak entered from the front (stomach region) or back (hip/buttock region). Appellant argues this was the crucial issue for the jury's rejection of appellant's self-defense argument. However, we disagree that the third-bullet issue was the pivotal issue in the case; the jury could easily have rejected appellant's self-serving testimony about Ciptak reaching into the truck, and his theory of self-defense

overall, on a number of bases.  If we concede for the sake of argument that the forensic testimony was the linchpin of the case that appellant maintains, we must agree with the trial court and find appellant has failed to demonstrate by clear and convincing evidence that he had "no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence."

{¶43} Appellant has not demonstrated why he could not have learned of Spitz's opinion, or the possible fallacies in the opinions of trauma surgeons, within the time limitations of Crim.R. 33.  Appellant has not explained why it took him until the preparation of his civil defense to rebut the forensic evidence presented by the State in his criminal trial.

{¶44} We further find appellant's proffered evidence does not warrant the granting of a new trial.  To warrant the granting of a motion for a new trial on the ground of newly discovered evidence, it must be shown that "the new evidence (1) discloses a strong probability that it will change the result of a new trial if granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.  We are required to review the issue of newly-discovered evidence from the record as a whole, and having done that, we disagree with appellant that the proffered affidavit of Dr. Spitz constitutes newly-discovered evidence within the meaning of

Crim.R. 33 as Dr. Spitz' affidavit and accompanying journal article merely impeach or contradict the State's forensic evidence.

{¶45} Accordingly, the trial court's decision is neither unreasonable, arbitrary, nor unconscionable, and the trial court did not abuse its discretion in overruling appellant's motion for leave to file a delayed motion for new trial.

{¶46} Appellant's sole assignment of error is overruled. The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Gwin, J. and

Wise, J. concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

PAD:kgb

[Cite as *State v. Petrone*, 2013-Ohio-1138.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ROBERT W. PETRONE | : | |
| | : | |
| | : | Case No. 2012CA00096 |
| Defendant-Appellant | : | |

    For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE